30 F.3d 1365
 74 A.F.T.R.2d 94-6303
 Charles R. TAYLOR, Plaintiff-Appellant,
v.
Ed APPLETON; Barbara Gutchin; Ken Bachman; Joseph B.
Cimilluca; Frank Andreacchi; First Bank of
Indiantown, Inc.; Robert Post, Jr.;
Ann Larocca; United States of
America, Defendants-Appellees,
National Telephone System, Inc., Defendant.
 No. 92-4971.
 United States Court of Appeals,
Eleventh Circuit.
 Sept. 1, 1994.
 
 Charles R. Taylor, pro se.
 Gary R. Allen, Tax Div. Dept. of Justice, Jordan L. Glickstein, Michael L. Paup, Charles E. Brookhart, Washington, DC, for appellees.
 Kenneth Scherer, Ackerman, Bakst, Choyd & Scherer, P.A., West Palm Beach, FL, for First Bank, Post & Appleton.
 Appeal from the United States District Court for the Southern District of Florida.
 Before COX and CARNES, Circuit Judges, and WOOD,* Senior Circuit Judge.
 HARLINGTON WOOD, Senior Circuit Judge:
 
 
 1
 Regardless of whether a plaintiff is represented by a veteran attorney or, as in this civil case, proceeds pro se, a court must first determine whether it has proper subject matter jurisdiction before addressing the substantive issues. The district court dismissed Plaintiff Charles Taylor's complaint for lack of subject matter jurisdiction, but granted Taylor leave to amend within twenty days. The district court concluded that Taylor's complaint did not allege facts giving the court subject matter jurisdiction. On that same day the district court denied as moot Taylor's "Motion for Default on Twelfth Cause of Action and Denying Plaintiff's Motion to Strike Defendants' Out of Time Response" ("Motion for Default Judgment"). Rather than amend the complaint to correct the deficiencies, Taylor filed a motion for reconsideration of the motion for default judgment. Taylor challenges the district court's dismissal for lack of subject matter jurisdiction and the denial of his motion for reconsideration.
 
 I. Background
 
 2
 Taylor's complaint contains twelve counts against multiple defendants.[1] At Taylor's request the district court dismissed counts one and four. Counts two, three, and five through eleven allege state common law claims. Only count twelve possibly raises a federal issue.
 
 
 3
 The basis of Taylor's claims arise out of his six month oral employment contract with First Bank of Indiantown ("Indiantown"), through its president, Ed Appleton. Under this contract Taylor served as Indiantown's agent and supervised the operations of Mather & Associates, Inc. Taylor worked for Mathers & Associates and Mathers Survey Corporation, two companies that fell into tax problems with the Internal Revenue Service (IRS) for not paying taxes withheld from employees. Indiantown came to the rescue by loaning money to the companies to pay their tax obligations, but required Taylor to assume certain responsibilities. After the companies again failed to remit payment to the IRS for taxes due and owing, IRS Officer Ann LaRocca recommended that a penalty be assessed against Taylor as a responsible person under 26 U.S.C. Sec. 6672 for the last three quarters of 1986. Taylor argues that the IRS assessed these penalties against him based on false statements made by Barbara Gutchin and National Telephone Systems about him to the IRS during bankruptcy proceedings.
 
 
 4
 Believing that IRS files contained false and inaccurate information about him, Taylor filed a Freedom of Information Act request with the IRS on May 18, 1990. After receiving some but not all of the requested documents, Taylor filed this lawsuit.II. Subject Matter Jurisdiction
 
 
 5
 Federal courts exercise limited subject matter jurisdiction, empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution or otherwise authorized by Congress. Wright, Miller & Cooper, 13 Federal Practice and Procedure, Sec. 3522 (1984). In 28 U.S.C. Sec. 1331-32 (Supp.1992), Congress granted federal courts jurisdiction over diversity actions and cases raising a federal question. If jurisdiction is based on either of these, the pleader must affirmatively allege facts demonstrating the existence of jurisdiction and include "a short and plain statement of the grounds upon which the court's jurisdiction depends." Fed.R.Civ.P. 8(a).
 
 
 6
 In the district court Taylor stated that he sought subject matter jurisdiction on diversity grounds. For a federal court to have diversity jurisdiction the plaintiff must allege a proper jurisdictional basis in the complaint including an amount in controversy in excess of $50,000 exclusive of interest and costs, and that the plaintiff and defendants are citizens of different states. 28 U.S.C. Secs. 1332. Taylor's complaint fulfills the first requirement, though not the second.
 
 
 7
 Citizenship, not residence, is the key fact that must be alleged in the complaint to establish diversity for a natural person. For a corporate defendant the complaint must allege either the corporation's state of incorporation or principal place of business. 28 U.S.C. Sec. 1332. Taylor's complaint alleges that he is a citizen of Florida, but does not allege the citizenship of the natural defendants or the principal place of business for the corporate defendants. Because of these deficiencies, the district court correctly concluded that the federal courts do not have subject matter jurisdiction on diversity grounds.
 
 
 8
 Federal question jurisdiction exists when an action arises under the Constitution, laws, or treaties of the United States. Count twelve alleges that the United States violated the Freedom of Information Act ("FOIA"), 5 U.S.C. Sec. 582, when the Internal Revenue Service ("IRS") did not comply to Taylor's satisfaction, with his request for documents under the Act. The district court concluded that it did not have subject matter jurisdiction because Taylor did not allege in his complaint that he exhausted his administrative remedies before seeking judicial review.
 
 
 9
 The FOIA clearly requires a party to exhaust all administrative remedies before seeking redress in the federal courts. Dresser Indus., Inc. v. United States, 596 F.2d 1231, 1238 (5th Cir.1979); Hedley v. United States, 594 F.2d 1043, 1044 (5th Cir.1979) (per curiam);[2] Spannaus v. U.S. Dept. of Justice, 824 F.2d 52, 58 (D.C.Cir.1987); In re Steele, 799 F.2d 461, 465 (9th Cir.1986); Brumley v. U.S. Dept. of Labor, 767 F.2d 444, 445 (8th Cir.1985) (per curiam); Stebbins v. Nationwide Mutual Ins. Co., 757 F.2d 364, 366 (D.C.Cir.1985); Cazalas v. United States Dept. of Justice, 660 F.2d 612 (5th Cir.1981).[3] This exhaustion requirement is a condition precedent to filing suit intended to allow a federal agency to exercise its discretion and authority, as well as create a descriptive factual record for the district court to review if necessary. See Steele v. United States, 799 F.2d 461, 466 (9th Cir.1986). FOIA provides for two different types of exhaustion, actual and constructive. Actual exhaustion occurs when the agency denies all or part of a party's document request. Constructive exhaustion occurs when certain statutory requirements are not met by the agency. Taylor argues that the statutory requirements for constructive exhaustion are present, and that a federal question is properly raised by his complaint.
 
 
 10
 A party is deemed to have constructively exhausted all administrative remedies "if the agency fails to comply with the applicable time limit provisions of this paragraph." 5 U.S.C. Sec. 552(a)(6)(C). Two time limits are stated in paragraph (a). After receiving a FOIA request, a federal agency must:
 
 
 11
 "determine within ten days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of such determination and the reasons therefor, and of the right of such person to appeal to the head of the agency any adverse determination."
 
 
 12
 5 U.S.C. Sec. 552(a)(6)(A)(i). The second time limit concerns appeals and requires the agency to:
 
 
 13
 make a determination with respect to any appeal within twenty days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of such appeal. If on appeal the denial of the request for records is in whole or in part upheld, the agency shall notify the person making such request of the provisions for judicial review of that determination under paragraph (4) of this subsection.
 
 
 14
 5 U.S.C. Sec. 552(a)(6)(A)(ii). In certain prescribed circumstances an agency may extend the response time by ten days if it provides written notice to the requester. 5 U.S.C. Sec. 552(a)(6)(B). If the agency has not responded within these statutory time limits, the requester may bring suit. These time limit provisions are intended to promote a timely agency response and contribute to the faster release of the information sought.
 
 
 15
 Taylor's complaint and the documents attached to it allege the following facts. On May 18, 1990, Taylor submitted to the IRS, Washington D.C. office, his initial FOIA request for all IRS records involving the assessment of a tax penalty against him. The IRS responded by letter dated May 23, 1990, and informed Taylor that his request had been referred to the IRS office in Ft. Lauderdale, Florida, because that office had jurisdiction over the documents he sought.
 
 
 16
 As Taylor notes, Section 552(a)(6)(A)(i) requires the government agency within ten days to immediately notify the person making the request (1) of a determination to comply or not comply, and (2) the right to appeal any adverse determination. The IRS did not simply ignore Taylor's FOIA request. Within the ten-day period, it acknowledged receipt of Taylor's request and informed him that his request was being forwarded to the IRS office in Ft. Lauderdale. The Ft. Lauderdale office did not reply within ten days. After the requirements for constructive exhaustion arguably were met under Section 552(a)(6)(C), Taylor could have filed a lawsuit in federal court to compel a response by the IRS. However, instead of filing suit in federal court, Taylor waited for a response from the IRS.
 
 
 17
 Approximately one month later, on June 27, 1990, Taylor received some documents from the IRS. Because Taylor believed that various requested documents had not been produced and that the documents produced were disorganized, he filed an administrative appeal and second request on July 6, 1990.[4] By letter dated July 27, 1990, the IRS responded to Taylor's second letter, produced additional documents, denied access to certain documents citing specific provisions of FOIA. Regarding some documents requested but not produced, the IRS directed Taylor to (1) send form 4506 with $4.25 for additional 941 or 940's; (2) obtain from the reading room in Washington, D.C., cases he sought that had been cited by Andreachi during the tax penalty case; and (3) obtain third party consent for the release of confidential information that was exempt from disclosure pursuant to 5 U.S.C. Sec. 552(b)(7)(C). The letter also stated that enclosed with the letter was a form explaining documents exempt from FOIA discovery and appeal procedures. According to the record before us, this is the first letter informing Taylor of his right to an administrative appeal and it is on this date that the IRS complied with the requirements of FOIA. See 5 U.S.C. Sec. 552(a)(6)(A). Taylor does not allege that he complied with any of the IRS's requests or pursued his administrative remedies, choosing instead to file suit in the district court on August 22, 1990. We must decide whether, under these circumstances, Taylor had to actually exhaust his administrative remedies before filing a lawsuit in federal court.
 
 
 18
 The United States Court of Appeals for the District of Columbia Circuit has extensively discussed this issue in a well-reasoned opinion in Oglesby v. United States Department of Army, 920 F.2d 57 (D.C.Cir.1990). Oglesby held that after the agency properly responds to a request belatedly but before a lawsuit is filed, the party must actually exhaust administrative remedies before going to court. The court recognized that the purpose of the ten-day limit was to grant the requesting party a right to seek a judicial order when an agency completely fails to comply with the request, and not to provide a perpetual right to sue. The court reasoned:
 
 
 19
 We believe that where a requester has chosen to wait past the ten-day period until the agency has responded, Congress intended that the administrative route be pursued to its end. It did not mean for the court to take over the agency's decision-making role in midstream or to interrupt the agency's appeal process when the agency has already invested time, resources, and expertise into the effort of responding.
 
 
 20
 Allowing a FOIA requester to proceed immediately to court to challenge an agency's initial response would cut off the agency's power to correct or rethink initial misjudgments or errors. The extra several weeks consumed in processing an administrative appeal to completion must surely have been thought a tolerable price to ask from a requester who has already chosen to wait for a response from the agency. If there is to be any uniformity in FOIA interpretations within a given agency, and if agencies are to have an opportunity to revise their responses in light of intervening responses to the same FOIA request by other agencies, such uniformity can best be afforded through the administrative appeal process. Enforcing the ten-day limit by allowing requesters unhappy with the first level response to their request to go to court months or even years after the agency has responded would amount to little more that a continuing penalty on the agency for its initial delay. A requester who waits long past the ten-day deadline for the agency's response and then brings suit without administrative appeal has by his actions indicated that time cannot be of the essence.
 
 
 21
 Id. at 64-65. We are persuaded by the sound reasoning behind this interpretation of Sec. 552(a)(6)(C) which permits a challenge to the timeliness of the agency response, not to the adequacy of that response. Where a party has deliberately chosen to wait for a proper response from the agency after initial delay, actual exhaustion must occur before a federal court has jurisdiction to review challenges to administrative action under FOIA. We, therefore, join the District of Columbia Circuit and the Third Circuit on this issue. McDonnell v. United States, 4 F.3d 1227, 1240 (3d Cir.1993). See also Voinche v. Federal Bureau of Investigation, 999 F.2d 962, 963 (5th Cir.1993).
 
 
 22
 As noted, Taylor chose not to file a lawsuit until after the agency properly responded to his requests on July 27, 1990. When he became dissatisfied with the documents obtained from the IRS in that response, he instituted this lawsuit rather than continue to pursue an administrative remedy. Under the facts alleged in his complaint he neither actually nor constructively exhausted his administrative remedies.
 
 
 23
 Taylor argues that Oglesby, 920 F.2d at 67, requires the court to find that he constructively exhausted his remedies. There the requester sought certain documents from the Department of State ("State"). State responded in two different letters. The first letter merely informed the requester that State would process his request. The second letter informed the requester that no documents responsive to his request had been found, an adverse determination under 5 U.S.C. Sec. 552(a)(6)(A)(i), but did not notify the requester of his right to appeal. Therefore, the court concluded that the requester did not have to actually exhaust his remedies before filing suit. Here the IRS did respond, told Taylor which documents were being withheld, why, and what he needed to do in order to obtain the withheld documents, and provided information on appellate procedures. In short, the exhaustion requirement was triggered once the IRS met its obligations.
 
 
 24
 Though we understand Taylor's attempt to obtain IRS documents he believes contain false information about him, a plight which has now continued for almost four years, we find that FOIA requires him to actually exhaust all administrative remedies and then, if unsatisfactory, to set forth those allegations in the complaint before a federal court can exercise jurisdiction over the merits of his FOIA claims.[5] The district court gave him an opportunity to amend his complaint within twenty days, he opted not to do so, and his complaint was dismissed without prejudice. Because the dismissal was proper, the district court properly denied Taylor's motion for reconsideration as moot.
 
 
 25
 AFFIRMED.
 
 
 
 *
 Honorable Harlington Wood, Jr., Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation
 
 
 [1]
 Taylor names many defendants in the various counts of his complaint including Ed Appleton, Barbara Gutchin, Ken Bachman, Joseph B. Cimilluca, First National Bank of Indiantown, Inc., Frank Andreacchi, Robert Post, Jr., Ann Larocca, and the United States of America. Andreacchi, Post, and Larocca are employees of the Internal Revenue Service named in their individual capacities
 
 
 [2]
 Decisions of the Fifth Circuit rendered before October 1, 1981, are binding on this court under Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981)
 
 
 [3]
 Defendants moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). Exhaustion of administrative remedies is not a jurisdictional requirement, however. Dresser, 596 F.2d 1231, 1238. Instead, it is "an exhaustion of administrative remedies requirement ... perform[ing] a function similar to the judicial doctrine of ripeness by postponing judicial review." Id. Therefore, the FOIA claim should not have been dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. Rather, it should have been dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted
 In dismissing the FOIA claim, the district court relied on Exhibit M to the complaint indicating that the IRS had informed Taylor of the available administrative remedies. Taylor asserts that by relying on this document the district court converted the Rule 12 motion into a Rule 56 motion for summary judgment, thus requiring the district court to give him express notice of existing rights under Rule 56. Griffith v. Wainwright, 772 F.2d 822, 824-25 (11th Cir.1985).
 Fed.R.Civ.P. 10(c) provides: "A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Thus the document relied on by the district court was part of the pleadings, the 12(b)(6) motion was not converted to a motion for summary judgment, and no express notice was required.
 
 
 [4]
 Taylor characterizes this letter as an appeal rather than a follow-up request. The IRS treated this second letter as a second request, attempted to produce the specific documents sought by Taylor, and told him what he had to do to obtain the requested documents
 
 
 [5]
 The district court also correctly concluded that it did not have supplemental jurisdiction over the other state common law counts contained in Taylor's complaint. Before a federal court can exercise supplemental jurisdiction, it must first have either diversity or federal question jurisdiction. As noted above, neither of these forms exist, and it would be inappropriate to exercise supplemental jurisdiction in this instance